IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| OTHA JAMES, | § | |
| TDCJ #1258537, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-06-0418 |
| | § | |
| WILLIAM GONZALEZ, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmate Otha James (TDCJ #1258537, former TDCJ #529478) has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights. James proceeds *pro se* and *in forma pauperis*. He has filed an amended complaint and, at the Court's request, he has also provided a more definite statement of his claims. (Docs. # 13, # 30). The defendants have filed a motion for summary judgment. (Doc. # 55). James has filed a response to the motion. (Doc. # 58). James has also filed a motion for a continuance and he requests leave to conduct discovery. (Docs. # 56, # 57). After reviewing all of the pleadings, the summary judgment record, and the applicable law, the Court grants the defendants' motion and dismisses this case for reasons that follow.[1]

**I.   BACKGROUND**

---

[1]   On October 25, 2007, this case was reassigned to United States District Judge Melinda Harmon pursuant to General Order 2007-10. The case is being handled by the undersigned by agreement of the judges.

James is presently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") at the Coffield Unit. James sues several physicians, including Dr. William Gonzalez, Dr. Maxwell, Dr. Kearney, and Dr. Hilton, who are employed by the University of Texas Medical Branch ("UTMB") Hospital in Galveston.

James complains that the defendants failed to provide adequate care for a broken hand. In particular, James claims that the doctors were negligent and committed malpractice in connection with surgical procedures that occurred on April 5, 2005, and February 8, 2006, at the UTMB Hospital in Galveston. Thus, James alleges that the defendants failed to provide adequate medical care in violation of the Eighth Amendment to the United States Constitution. James seeks $1 million in compensatory and punitive damages for his pain and suffering. The defendants have moved for summary judgment, arguing that James is not entitled to the relief that he seeks. The parties' contentions are discussed further below under the governing standard of review.

## II.   **STANDARD OF REVIEW**

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances. Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a

complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

The defendants have filed a motion for summary judgment, arguing that the plaintiff's claims fail as a matter of law. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for summary judgment, the Court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185

4

F.3d 521, 525 (5th Cir. 1999)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in

search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted). Although the plaintiff proceeds *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

### III.  DISCUSSION

Invoking the Eleventh Amendment, all of the defendants assert that they are immune from James's claims for monetary damages against them in their official capacity. The defendants argue further that James cannot demonstrate a constitutional violation of the Eighth Amendment and that they are entitled to qualified immunity from suit in their personal or individual capacity. The defendants' arguments are addressed in turn.

#### A.  Immunity from Official Capacity Claims

All of the defendants are employed in one capacity or another by UTMB, which is a state agency. As employees of the State of Texas, the defendants argue that the Eleventh Amendment to the United States Constitution bars any claim for monetary relief against them in their official capacity. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Thus, federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies. *See*

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Vogt v. Board of Comm'rs, Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002).

Unless expressly waived, the Eleventh Amendment bars an action in federal court by, *inter alia*, a citizen of a state against his or her own state, including a state agency. *See Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002). As instrumentalities of the state, UTMB and TDCJ are immune from a suit for money damages under the Eleventh Amendment. *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). It is also settled that the Eleventh Amendment bars a recovery of money damages under § 1983 from state employees in their official capacity. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).

In this case, James sues the defendants for actions taken during the course of their employment with the State of Texas. To the extent that James seeks monetary damages in this case, the Eleventh Amendment bars his claims against the defendants as state employees.[2] It follows that the defendants are entitled to immunity under the Eleventh Amendment from James's claims for money damages against them in their official capacity. Accordingly, the defendants are entitled to summary judgment on this issue.

**B.     Qualified Immunity from Individual Capacity Claims**

---

[2]     A narrow exception to Eleventh Amendment immunity exists for suits brought against individuals in their official capacity, as agents of the state or a state entity, where the relief sought is injunctive in nature and prospective in effect. *See Aguilar*, 160 F.3d at 1054 (citing *Ex parte Young*, 209 U.S. 123 (1980)). James does not seek injunctive relief in this instance.

The defendants argue further that James has failed to establish a constitutional violation and that, even assuming that such a violation occurred, they are entitled to qualified immunity from his Eighth Amendment claims against him. Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions." *Cozzo v. Tangipahoa Parish Council – President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cty.,* 245 F.3d 447, 456 (5th Cir. 2001)). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, the Court must conduct a bifurcated analysis. *See, e.g., Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004). The threshold question has two parts. The initial inquiry asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Scott v. Harris*, — U.S. —, —, 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). If the defendants' actions violated a clearly established constitutional right, the final step of the analysis asks whether qualified immunity is appropriate, nevertheless, because the defendants' "actions were

8

objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537 (citations omitted).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id*. The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id*.

At the summary judgment stage of this case, a determination whether a constitutional right was violated for purposes of the first prong of the qualified immunity analysis overlaps substantially with the defendants' contention that the plaintiff's Eighth Amendment claim lacks merit. Accordingly, the Court first addresses whether James has raised a genuine issue of material fact about whether the defendants committed a constitutional violation under the Eighth Amendment standard that governs the level of medical care in the prison context.

### 1.     **Eighth Amendment – Medical Care**

To prevail under 42 U.S.C. § 1983, James must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution. "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as

imposing a duty on prison officials to 'ensure that inmates receive adequate . . . medical care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter*, 467 F.3d at 463 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

The Eighth Amendment deliberate-indifference standard has both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish deliberate indifference under this standard, the prisoner must show that the defendants were both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *See id.* at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id*. (citations

omitted). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (citations omitted).

In this instance, James complains that he was denied adequate care for a broken hand. Pointing to his medical records, which confirm that James received extensive care for his right hand, the defendants dispute James's claim that he was denied adequate medical care. (Doc. # 55, Exhibit C).

The medical records reflect that James was examined at the Gurney Unit in October of 2004, where he reported pain in his right wrist. A nurse noted that James previously had surgery on his right hand and that he "retained hardware" to stabilize an old fracture that reportedly occurred in 1998. An x-ray revealed that two screws were broken and were "backing out" of the rod that had been inserted to stabilize the broken hand. The radiologist's report noted that there were "fractures of two screws involving the metacarpal" or finger. Although there was no fracture to the hand, there was some "fusion" of the radial carpal joint, intercarpal joints, and possibly the third metacarpal joint in James's hand. On October 25, 2004, James was examined at the UTMB Hospital in Galveston and scheduled for surgery to remove the broken hardware in December. In the meantime, James was issued a splint and he was prescribed Darvocet to treat his pain. James was also given a "handicapped pass" and restricted from lifting anything over 12 pounds.

James did not have surgery as planned in December of 2004. On January 11, 2005, he was examined again at the UTMB Hospital in Galveston, where the surgery was rescheduled. James continued to receive pain medication and his hand was immobilized with a splint until April 5, 2005, when he had surgery to remove the broken hardware from his hand. Following the surgery, James was prescribed pain medication and released to the Coffield Unit with a splint to immobilize his hand. Although James complained of pain on April 14, 2005, the nurse who examined him noted no inflammation or swelling around the suture, which appeared clean and dry. An x-ray was taken on April 21, 2005, and reviewed by Dr. Gonzalez on April 29, 2005. James was seen several more times in the clinic in April, May, and June of 2005, for his complaints of pain and to schedule follow-up care.

On August 10, 2005, James was examined at the Beto Unit clinic by a physical therapist. James complained that his pain had become worse and that he had lost the grip in his right hand. The physical therapist diagnosed carpal tunnel syndrome and prescribed paraffin baths along with light exercises for thirty days. On August 18, 2005, an x-ray was taken of James's right hand and reviewed by Dr. Gonzalez on August 24, 2005. According to his report, Dr. Gonzalez observed a "slight deformity" at the base of the first metacarpal, but no evidence of an acute fracture or dislocation.

James continued to complain about pain in his right hand and wrist. The medical records reflect that he was seen several times at the unit infirmary in August, September, and October of 2005. During these visits, James received physical therapy, he was prescribed pain medication, and he was given an "ace wrap" to protect his hand. On October 6, 2005,

James was examined at the Brace and Limb Clinic at the Beto Unit, where he was issued a "volar splint" at the request of the UTMB Galveston Orthopedic Clinic.

James continued to complain about pain in his hand and he was seen several more times at the Coffield Unit infirmary in November and December of 2005, where he received pain medication. On December 16, 2005, James was seen by a orthopedic specialist in Galveston, who referred James for a thumb splint, prescribed pain medication, and recommended a follow-up appointment. Complaining that his thumb was broken, James requested more pain medication in January of 2006. On January 6, 2006, James was seen at the UTMB Department of Rehabilitation Services Division of Occupational Therapy in Galveston. He was fitted with a custom splint and evaluated for additional surgery. He was also prescribed pain medication. On February 7, 2006, James was admitted to the UTMB Hospital for a second surgical procedure on his hand (a right hand trapeziectomy and ligament reconstruction), where was noted that he had some arthritis. James had the surgery the following day, on February 8, 2006.

In this instance, James does not take issue with any of the care that was provided at the Coffield Unit or any other infirmary. He complains only about the level of care that was provided by the defendants at the UTMB Hospital in Galveston, where James had surgery on April 5, 2005, and on February 8, 2006. According to his more definite statement, James complains that Dr. Hilton acted negligently during the first surgery that was performed on April 5, 2005. (Doc. #30). James complains that certain hardware was allowed to remain in his hand that should have been removed, and that other hardware was removed that should

have been allowed to remain. As a result of Dr. Hilton's negligence, James claims that his right thumb was broken. James complains further that, during his second surgery on February 8, 2006, Dr. Maxwell and Dr. Kearney acted negligently by removing a bone from his hand without his consent. James complains that he only consented to have the bone in his thumb re-fused.

In response to James's allegations, the defendants present an affidavit from Dr. Ronald Lindsey, who is the Department Chair of UTMB's Orthopedic Surgery and Rehabilitation Department. (Doc. # 55, Exhibit B). Dr. Lindsey reviewed James's medical records and concludes that, based on this review, the defendants were "prudent in their operative management of this patient" and that their treatment "met the standard of care for his condition." (*Id.* at 196). Dr. Lindsey also refutes each of James's allegations against the defendants. In response to James's allegation that hardware was left in his hand without his consent during the first surgery, Dr. Lindsay notes that James was informed prior to the procedure that "two of the three screws in the third metacarpal had broken and the screw fragments embedded in the bone would not be removed." (*Id.* at 195). Regarding James's allegation that the first surgery caused his broken thumb, Dr. Lindsay notes that the thumb was not broken following the surgery but that James developed severe arthritis in his first carpometacarpal (CMC) joint. (*Id.*). According to Dr. Lindsay, this was likely the cause of his pain and disability. (*Id.*). Dr. Lindsay notes that James received an orientation before his surgery on April 5, 2005, and February 8, 2006, in which he was informed of his rights and responsibilities, the primary diagnoses, and he was given a plan of care prior to signing an

14

informed consent form. (*Id.*). In response to James's allegation that a bone was removed from his hand without his consent during the second surgery, Dr. Lindsey notes that James was clearly informed that the procedure involved, a trapeziectomey, would result in the removal of the trapezium bone in his right hand. (*Id.* at 137).

James does not dispute that he received extensive care, including two surgeries in an effort to remove broken hardware and repair his damaged right hand. To the extent that James disagrees with the level of care that he received, the Fifth Circuit has held repeatedly that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977). Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *See Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).

James's primary claim is that the defendants were negligent and that the doctors who treated him at the UTMB Hospital in Galveston committed medical malpractice. It is well established that allegations of unsuccessful medical treatment, acts of negligence, or medical malpractice "do not constitute deliberate indifference[.]" *Gobert*, 463 F.3d at 347 (citations omitted). Thus, allegations of negligence and medical malpractice will not suffice to demonstrate an Eighth Amendment claim. *See Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th

Cir. 2001); *see also Stewart*, 174 F.3d at 534 ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not.").

James does not allege or show that he was refused care or that the defendants intentionally treated him incorrectly with wanton disregard for his medical condition. *See Domino,* 239 F.3d at 756. His allegations concerning the level of care that he received are not sufficient to establish that he was treated with deliberate indifference and do not state a violation of the Eighth Amendment. Accordingly, James fails to establish a constitutional violation.

### 2. Objective Reasonableness

Because James has failed to establish a constitutional violation, the Court need not proceed to the final step of the qualified immunity analysis. *See Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007). Nevertheless, the defendants argue that, even if a violation occurred, they are entitled to qualified immunity from suit because they acted in good faith and their conduct was objectively reasonable under the circumstances. To avoid summary judgment on the defendants' qualified immunity defense, a plaintiff must present evidence to raise a fact issue "material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law *and facts available to them*." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) (emphasis added). If reasonable public officials could differ as to whether the defendant's actions were lawful, the defendant is entitled to immunity. *See Malley*, 475 U.S. at 341. "Even if a defendant's

16

conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)).

Where qualified immunity is asserted, James, as the plaintiff, has the burden to produce admissible evidence that raises a genuine issue of material fact on whether the defendants' actions were objectively unreasonable under the circumstances in view of existing law and the facts known to them. *See Michalik*, 422 F.3d at 262. James has filed a response to the summary judgment motion, but his allegations do not overcome the defendants' assertion of qualified immunity. As outlined above, there is no evidence that the defendants had any personal involvement in the decisions that were made about James's medical care. Likewise, the summary judgment record reflects that James received consistent care. James's unsupported allegation that he was denied adequate medical care does not raise a genuine issue of material fact on whether the defendants' actions were unreasonable under the circumstances and is not sufficient to overcome the defendants' assertion of qualified immunity in this instance. The Court concludes, therefore, that summary judgment on the defendants' assertion of qualified immunity is warranted.

### C.  Pendent State Law Claims

The defendants argue that any state law claim for negligence or medical malpractice fails to state a claim. The defendants note that James failed to comply with applicable state law by giving the requisite notice of his claims. *See* TEX. CIV. PRAC. & REM. CODE § 74.051.

Because James failed to follow mandatory state procedures, the defendants contend that his state law claim for medical malpractice fails as a matter of law. Alternatively, the defendants maintain that James fails to establish a valid claim for medical malpractice and that his complaint is without merit.

Where a court dismisses a party's federal claims, the "general rule" is to dismiss any pendent state law claims without prejudice so that the plaintiff may re-file his claims in the appropriate state court. *See Wong v. Stripling*, 881 F.2d 200, 203-04 (5th Cir. 1989); *see also Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir. 1994) (upholding the dismissal of an inmate's state law claims following the dismissal of his federal claims). The decision to entertain or dismiss the pendent state claims is within the district court's discretion. *See Wong*, 881 F.2d at 204. Because the complaint has failed to state a federal claim, the Court elects to follow the general rule and to dismiss the pendent state law claims without prejudice.

### C.     James's Motion for Discovery

James has filed a response to the summary judgment motion, along with numerous exhibits. (Doc. # 58). James has also filed a motion for an extension of time and a motion for leave discovery in the form of an affidavit from a court-appointed expert witness. (Docs. # 56, # 57). The Court construes this request as a motion for a continuance to conduct discovery under Rule 56(f) of the Federal Rules of Civil Procedure. Under Rule 56(f)(2), the Court may grant a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken, if the party opposing a motion for summary judgment shows by affidavit that it cannot present facts essential to justify its opposition.

Motions for a continuance under Rule 56(f) are "generally favored, and should be liberally granted." *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999) (citing *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992)). To justify a continuance, however, the Rule 56(f) motion must demonstrate (1) why the movant needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact. *See Stearns Airport Equip.*, 170 F.3d at 534-35 (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)). In that regard, the movant "must be able to demonstrate how postponement and additional discovery will allow him to defeat summary judgment; it is not enough to 'rely on vague assertions that discovery will produce needed, but unspecified, facts.'" *Stearns Airport Equip.*, 170 F.3d at 535 (quoting *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) (citation omitted)).

James does not meet his burden to show that a continuance is warranted under Rule 56(f) in this instance. In support of his request for a continuance to conduct discovery, James repeats his allegations of negligence. James makes similar claims in his pleadings. As noted above, allegations of negligence or medical malpractice are not sufficient to demonstrate a constitutional violation and are not actionable under 42 U.S.C. § 1983. *See Gibbs*, 254 F.3d at 549. Thus, James does not allege specific facts showing that additional discovery is needed in order to demonstrate a genuine issue of material fact. Because James has not established how the continuance or the discovery that he seeks will create a genuine issue of material fact, his motion for additional time to conduct discovery will be denied.

### IV.  CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. The defendants' motion for summary judgment (Doc. # 55) is **GRANTED**.

2. The defendants' motion for leave to submit a summary judgment motion out of time (Doc. #54) is **MOOT**.

3. The plaintiff's motion for a continuance (Doc. # 57) and his motion for discovery (Doc. # 56) is **DENIED**.

4. The plaintiff's civil rights complaint is **DISMISSED** with prejudice and the plaintiff's state law claims of negligence are **DISMISSED** without prejudice.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED on <u>October 22</u>, 2008.

_____
Nancy F. Atlas
United States District Judge